UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ROYAL WINE CORPORATION,

        Plaintiff,

  v.

GOLAN HEIGHTS WINERY LTD.

        Defendant .

Civil Action No. 05-5397 (KSH)

**OPINION**

**KATHARINE S. HAYDEN, U.S.D.J.**

**I.    INTRODUCTION**

Royal Wine Corporation ("plaintiff" or "Royal") filed a complaint against Golan Heights Winery Ltd. ("defendant" or "Golan") in state court, Chancery Division, Hudson County, on October 18, 2005. Plaintiff's first count is for a declaratory judgment regarding ownership of the mark "GAMLA." The second and third counts are for breach of contract and breach of the implied covenant of good faith and fair dealing, respectively. Defendant removed the case to federal court, and now moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) based on the forum selection clause in the contract between the parties.

**II.    MOTION TO DISMISS STANDARD/JURISDICTION**

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must deny the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The

1

Court must accept all allegations in the complaint as true, and draw all reasonable inferences the non-movant's favor. Curtis v. Everette, 489 F.2d 516, 518 (3d Cir. 1973). In addition, the Court "may use [the non-movant's] brief to clarify allegations in [the] complaint whose meaning is unclear." Pegram v. Herdrich, 530 U.S. 211, 230 n.10 (2000), citing *inter alia*, Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1364, pp. 480-481 (1990); Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410, 428 n.8 (3d Cir. 1999).

This Court has jurisdiction pursuant to 28 U.S.C. § 1332, diversity jurisdiction.

### III.  BACKGROUND

Plaintiff is a New York corporation with its principal place of business in Bayonne, New Jersey, that imports and distributes Kosher wines, liquors, and grape juice. (Complaint ¶ 3.) Defendant is an Israeli corporation that produces and distributes wine products. (Id. ¶ 4.) Plaintiff claims that it has owned the trademark "GAMLA" in the United States for twenty years, and that it uses this trademark exclusively for the sale of Kosher Israeli wines defendant produces. (Id. ¶ 1.) Plaintiff states that defendant decided to cut plaintiff out of the distribution chain so that it could distribute wines directly in the United States under the GAMLA trademark, misappropriating that trademark and acting in breach of the parties' exclusive distributorship agreement. (Id. ¶¶ 19, 26, 35.)

**A. Contractual History**

**The 1985 Agreement.**  According to the complaint, in June, 1985 plaintiff entered into a binding agreement with Hazor Wineries, "an Israeli wine producer, which, upon information and belief, later changed its name to Golan and, if not the same corporation, is defendant's

2

predecessor-in-interest." (Id. ¶ 5.) The terms provided that any wine that Hazor produced "will be offered to Royal for sale in the U.S.A.," and Hazor agreed that it "will not produce any wine for export into the U.S.A. at any time at a lower price than paid by Royal." (Id., Exhibit A.) The contract also states, "Royal is the owner of the Gamla Label for the U.S.A. Hazor can not sell this label to anybody in the U.S.A." (Id., Exhibit A.) Plaintiff claims that this contract gave it the exclusive right to import and distribute Israeli wines under the name GAMLA[1] in the United States (Id. ¶ 5), and that over the next 20 years it "worked diligently to create and build brand identification and goodwill for its GAMLA trademark" and "devoted significant time and over $1,000,000 to develop marketing and promotional strategies" for the GAMLA line of wines. (Id. ¶ 10.)

**The 1998 Agreement[2].** Plaintiff alleges that in 1998, "Golan decided to broaden the relationship by making Royal the exclusive distributor of all Golan beverages in the United States," not just the GAMLA wines. (Id. ¶ 12.) Plaintiff formed a subsidiary, 3-D Marketing Services, Ltd. ("3-D"), "to market, promote and sell all Golan products within Royal's territory." (Id. ¶ 12.) In October of 1998, plaintiff, defendant, and 3-D entered into a five-year distribution

---

[1] Plaintiff states that GAMLA is the name of an ancient Israeli city that is rumored to have survived fierce attacks by the Romans. (Id. ¶ 5.)

[2] Defendant alleges that there was also a 1993 agreement, and has attached this purported agreement as an exhibit to its motion. Plaintiff did not mention a 1993 agreement in its pleadings. When considering a 12(b)(6) motion, if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(b)(6). Also see Pension Ben. Guar. Corp. v. White Consol. Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). However, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Id. In this case, plaintiff's claims are not based on the alleged 1993 agreement. Therefore, the Court will exclude this exhibit and will not consider it for the purposes of this motion to dismiss.

agreement, which included this forum selection clause: "a) This Agreement shall be governed solely by Israeli law. b) Any unresolved disputes between the parties shall be brought before the competent court in Tel Aviv, Israel only." (Id., Exhibit B, ¶¶ 6, 18.)

**The 2001 Agreements.** According to the complaint, "[o]ver the next few years, certain disputes arose between the parties regarding their relationship." (Id. ¶ 14.) In early September, 2001, the parties resolved their differences during a video conference, and "executed two contracts reflecting the agreement reached at their September 6 meeting." (Id. ¶ 15.) Pursuant to those 2001 agreements, plaintiff was no longer the exclusive distributor for all Golan products. (Id. § 14.) However, plaintiff claims that the parties agreed, "consistent with the 1985 and 1998 Agreements," that Royal would continue to be the exclusive distributor of GAMLA wines in the U.S.A., and would continue to own the GAMLA trademark in the U.S.A. (Id. § 14.)

The first 2001 agreement, signed and dated October 24, 2001, states that "Royal shall continue to hold the proprietary rights of the Gamla trademark in the U.S.A." (Id., Exhibit C, ¶ 5.2.) The second 2001 agreement, signed and dated October 26, 2001, states that "Royal shall continue to hold the proprietary rights of the Gamla trademark in the U.S.A., provided that the wines sold under the Gamla trademark shall be wines produced solely by [Golan]." (Id., Exhibit D, ¶ 5.2.)

**B. Trouble Ensues**

Plaintiff claims that defendant "became increasingly unhappy with the [2001] agreements" as the U.S. market for Israeli wines grew, and "wanted to distribute Golan wines under the GAMLA trademark directly into the United States, rather than through Royal." (Complaint ¶ 19.) Plaintiff alleges that, to accomplish this end, defendant increased its prices to

4

plaintiff by 10% in 2003 and by 10-12% in 2004, all the while giving "substantial deals, discounts and incentives to retail dealers throughout the United States for Golan's own [non-GAMLA] brands." (Id. ¶¶ 20-21.)  In addition, plaintiff alleges that defendant "refused to supply Royal with sufficient quantities of wine for the GAMLA trademark," and "reduced the number of varieties" available under the GAMLA trademark.  (Id. ¶ 22.)  In 2005, plaintiff claims that defendant advised that it "intended to terminate Royal's exclusive distributorship arrangement under the [2001] Agreements so that Golan could distribute wines under the GAMLA trademark directly in the United States."  (Id. ¶ 26.)  Plaintiff claims that defendant asked it to sell the GAMLA trademark "back to defendant." (Id. ¶ 27.)  Plaintiff "offered to sell back the GAMLA trademark for $1 million," but defendant refused, "only because of the asking price and not because it believed it owned the GAMLA trademark."  (Id.)

Plaintiff later discovered that Golan had already registered two GAMLA trademarks with the United States Patent and Trademark Office in 2002, "contrary to the parties' clear agreement that Royal owns all rights to the GAMLA trademark in the United States."  (Id. ¶ 35.)

On May 29, 2005, defendant sent plaintiff a letter entitled, "Termination Notice."  (Letter Dated May 29, 2005, and annexed as Exhibit 5 to Plaintiff's Opposition to Motion to Dismiss.)  In that letter, the defendant states,

> it is impossible for [Golan] to allow Royal to continue to distribute the Gamla Wines of [Golan] in the USA.  The main reasons for that are, inter alia: (i) the recent substantial decrease in the annual sales of the Gamla Wins [sic] (in comparison to substantial increases in annual sales in the USA of the other types of [Golan's] wines . . .); and (ii) The fact that in recent years Royal have [sic] been distributing in the USA kosher wines of other Israeli producers.
> . . . .
> 	[Golan's] position is that upon termination of [Golan's] obligation

5

> to furnish the Gamla Wines to Royal, Royal [sic] proprietary rights to the
> Gamla trademark also terminates.
> . . . .
> In light of the above, [Golan] hereby gives Royal a notice of
> termination of the distribution agreement concerning the Gamla Wines.
> The actual termination shall get [sic] into effect within 12 months from the
> date of this letter . . . .

(Id.)  Plaintiff alleges that the reasons defendant gave in that letter for termination of its distributorship "are wholly unsupportable and advanced solely in bad faith."  (Id. ¶ 29.)

Plaintiff asks this Court for "declaratory judgment declaring that Royal is the owner of the GAMLA trademark in the United States" as well as a permanent injunction that both enjoins the defendant from selling or marketing products under the GAMLA trademark in the United States unless such sales or marketing are through Royal (Complaint, Wherefore Clause ¶ A), and enjoins the defendant from terminating its exclusive distributorship agreement with Royal (Complaint, Wherefore Clause ¶ B).  Plaintiff also asks the Court to compel the defendant to assign to plaintiff its registrations of the GAMLA trademark (Complaint, Wherefore Clause ¶ A) and to compel the defendant to perform its obligations under the parties' exclusive distributorship agreement (Complaint, Wherefore Clause ¶ B).  Finally, plaintiff asks for actual, compensatory, and consequential damages (Complaint, Wherefore Clause ¶ B), and such other relief as the Court deems just and proper (Complaint, Wherefore Clause ¶ C).

## IV.  MOTION TO DISMISS

As indicated above, the basis for this motion to dismiss the complaint pursuant to Rule 12(b)(6) is the forum selection clause in the 1998 contract.  Defendant claims that the 1998 agreement controls, and in it the parties agreed "to litigate all disputes that might arise between them under the Agreement exclusively in the Israeli courts and that such a dispute would be

governed by Israeli law." (Defendant's Moving Brief at 1.) Defendant argues that because the forum selection was made "in an arm's-length negotiation between experienced and sophisticated parties, it should be honored absent a showing that enforcement would be unreasonable." (Id. )

In opposition, plaintiff argues that the 1998 agreement was canceled and replaced by the 2001 agreements, neither of which have venue provisions. (Plaintiff's Opposition to Motion to Dismiss at 2-3.) Plaintiff argues that the intent to cancel the 1998 agreement is evident in the 2001 agreements. (Id. at 6-7.) Plaintiff points to the October 24, 2001 agreement and notes that Shalom Blayer, the Chief Executive Officer of Golan, manually struck out and initialed two provisions – one that attempted to tie Royal's marketing requirements to a period covered by the 1998 agreement, and one that gave Golan the right to terminate Royal's distributorship if Royal failed to sell "reasonable quantities of Gamla wine in the U.S.A.," a provision that, plaintiff argues, is embodied in the 1998 agreement. (Id.) Plaintiff extrapolates and argues that "if Golan intended for the October 2001 Agreements to incorporate the terms of the 1998 Agreement, it would not have struck terms which did just that." (Id. at 13.)

Continuing with its argument that the 2001 agreements are the operative documents, plaintiff points to the May 29, 2005 termination letter defendant sent. (Id. at 7.) There, plaintiff argues, defendant admitted that the 1998 agreement was "nullif[ied] and cancel[ed]" because "under the Agreement signed between [Golan] and Royal in [sic] October 26, 2001 (the "2001 Agreement"), [Golan] and Royal concluded the business relations between them concerning the distribution of [Golan's] wines in the USA by Royal." (Id. at 7.) Plaintiff also notes that both 2001 agreements state that defendant was to pay plaintiff "$100,000 extra to close the outstanding business" between the two companies, which, plaintiff argues, refers to the 1998

7

agreement and demonstrates that the intent of the parties to the 2001 contracts was to "close" or cancel the 1998 agreement. (Id. at 7.)  Plaintiff argues that this payment was a fee for the early termination of the exclusive distribution rights to all Golan products, and since the purpose of the 1998 agreement was to give Royal the exclusive distribution rights to all Golan products, the payment shows the intent of the parties to cancel that agreement.  (Id. at 7-8.)

In reply, defendants argue that the 1998 agreement is still in effect, and point to the "express language of the 2001 Modifications that 'Royal shall continue to serve as the exclusive distributor of Gamla wines in the U.S.A., *based on the agreements signed between the parties with respect to Gamla wines between the years 1985 and 1998.*'" (Defendant's Reply Brief at 1, quoting October 21, 2001 agreement ¶ 5.1 and October 26, 2001 agreement ¶ 5.1, annexed to Complaint as Exhibits C and D,  emphasis in Reply Brief.)  Defendant argues that this language shows that the 1998 agreement is still in place.  (Id. at 1.)

Plaintiff argues that the intent behind the above-quoted language was "that Royal's continued distribution of GAMLA wine [would] be in accordance with the general terms of the distribution framework established by those Agreements," not that any of the "specific terms of the canceled 1998 Agreement or the 1985 Agreement" would govern the continued distribution of GAMLA brand wines by Royal. (Plaintiff's Opposition to Motion to Dismiss at 8.)

### A. Discussion

Before the Court can decide whether to enforce the forum selection clause of the 1998 agreement, it must decide whether that agreement is still the one in effect between the parties. Plaintiff argues that the 2001 agreements were substituted contracts that canceled and replaced the 1998 agreement, while defendant characterizes them as mere modifications.  According to the

Restatement, "[a] substituted contract is one that is itself accepted by the obligee in satisfaction of the original duty and thereby discharges it."   Restatement (Second) of Contracts § 279 (2006).

The record contains numerous examples that support plaintiff's contention that the 2001 agreements were substituted contracts.  For example, the first paragraph of both 2001 agreements, in which defendant agreed to pay plaintiff "$100,000 extra to close the outstanding business between the two companies," can plausibly be read as a satisfaction and discharge of any then-existing agreement between the parties, including the 1998 agreement.  Although defendant vehemently argues that the language of paragraph 5.1 of both 2001 agreements[3] that expressly refers to the 1985 and 1998 agreements "incorporated" and "expressly preserved" the 1998 contract, it also argues that the 1985 contract is no longer valid.  If the language or paragraph 5.1 incorporated and expressly preserved the 1998 contract, would it not have incorporated and preserved the 1985 contract as well?  "It is a general rule of law that where one contract refers to and incorporates the provisions of another both shall be construed together."  Chicago Pneumatic Tool Co. v. Ziegler,  151 F.2d 784, 795 (3d Cir. 1945).  However,  when interpreting a contract, "the court seeks to ascertain the intent of the parties."  Williams v. Metzler, 132 F.3d 937, 947 (3d Cir.1997).  The intent of the parties in the making of the 2001 agreement is not as clear as defendants claim.

As another example, the 1998 agreement states, "[Royal] shall be entitled to continue the distribution and marketing of the wine produces under the brand name of "Gamla", provided

---

[3]That paragraph reads, "Royal shall continue to serve as the exclusive distributor of Gamla wines in the U.S.A., based on the agreements signed between the Parties with regard to Gamla wines between the years 1985 and 1998." (October 21, 2001 Agreement ¶ 5.1 and October 26, 2001 Agreement ¶ 5.1, annexed to Complaint as Exhibits C and D.)

these Products were made by [Golan]." (1998 Agreement ¶ 19, annexed to Complaint as Exhibit B.)  The 2001 agreements state that "Royal shall continue to hold the proprietary rights of the Gamla trademark in the U.S.A., provided that the wines sold under the Gamla trademark shall be wines produced solely by [Golan]."  (October 21, 2001 Agreement ¶ 5.2 and October 26, 2001 Agreement ¶ 5.2, annexed to Complaint as Exhibits C and D.)  If the 2001 agreements were meant only as modifications to the 1998 agreement, as defendant argues, why was this clause included at all, since it did not alter Royal's right to distribute Golan wines under the Gamla trademark?

Finally, the Court notes that the 1998 agreement states, "[a]ny modification to this Agreement shall be deemed to be void, unless it is made in writing and bears the joint signatures of all parties."  (1998 Agreement, ¶ 19, annexed to Complaint as Exhibit B.)  The signatories to the 1998 agreement are Golan, Royal and 3-D.  The signatories to the 2001 agreements are only Golan and Royal.  It would appear that the lack of the signatures of "all parties" would void the 2001 agreements if they were meant to be modifications of the 1998 contract, supporting plaintiff's position that the 2001 agreements are substitute contracts, not modifications to the 1998 contract.

While the Court need not credit bald assertions in the complaint, In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1429 (3d Cir. 1997), on the face of the complaint plaintiff has sufficiently pleaded that the 2001 agreements were substitute agreements that canceled the 1998 agreement, and as such, the complaint survives this motion to dismiss under Rule 12(b)(6).  And it is undisputed that the 2001 agreements do not contain a forum selection clause.

A motion to dismiss cannot be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Because plaintiff has shown that the 2001 contracts may be the operative contracts, and those contracts do not contain a forum selection clause, the defendant's motion to dismiss based on the forum selection clause in the 1998 contract is denied.

## V. CONCLUSION

Based on the foregoing, the defendant's motion to dismiss (document #20) is **denied** An appropriate order will be entered.


**Dated:**  September 7, 2006

/s/ Katharine S. Hayden
**KATHARINE S. HAYDEN, U.S.D.J.**